UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RASCHID ZIMMERMAN,

       Petitioner,

                                    CASE NO. 5:03-CV-60173

v.                            JUDGE MARIANNE O. BATTANI
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

BARRY D. DAVIS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          1.    *The Trial Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          2.    *Evidentiary Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          1.    *Governing Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
               a. Failure to Investigate/Prepare . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               b. Jury Trial Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
          3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
     E.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

\*      \*      \*      \*      \*

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of

habeas corpus. If the Court accepts this recommendation, the Court should grant in part and deny

in part a certificate of appealability. Specifically, the Court should grant a certificate of

appealability with respect to his claim that counsel was ineffective for failing to seek withdrawal of

his jury trial waiver, and deny the certificate in all other respects.

II.      REPORT:

A.      *Procedural History*

1.      Petitioner Raschid Zimmerman is a state prisoner, currently confined at the Ryan Correctional Facility in Detroit, Michigan.

2.      On December 14, 1999, petitioner was convicted of two counts of second degree murder, MICH. COMP. LAWS § 750.317; and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a bench trial in the Wayne County Circuit Court.  On January 6, 2000, he was sentenced as a second habitual offender to concurrent terms of 30-50 years' imprisonment on the murder convictions, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE INTRODUCTION OF OTHER BAD AND CRIMINAL ACTS OF THE DEFENDANT WAS MORE PREJUDICIAL THAN PROBATIVE AND RESULTED IN ABUSE OF DISCRETION, REQUIRING THIS COURT TO REVERSE THE DECISION AND ORDER A NEW TRIAL. FURTHERMORE, DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE PROSECUTOR FAILED TO GIVE REASONABLE NOTICE TO DEFENDANT CONCERNING THESE ACTS AND THE JUDGE FAILED TO RENDER A DECISION CONCERNING THE MOTION WHICH WAS ARGUED IN FRONT OF THE COURT CONCERNING THEM.

II.      THE TRIAL JUDGE CREATED REVERSIBLE ERROR WHEN SHE DECIDED TO ALLOW IN EVIDENCE THAT ONE OF THE VICTIMS CLAIMED TO HAVE WON $1,500 FROM THE DEFENDANT IN A DICE GAME ON THE BASIS OF AN EXCITED UTTERANCE.

Petitioner filed a *pro per* supplemental brief raising one additional claim:

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL GUARANTEED BY THE SIXTH AMENDMENT AND CONST. 1963, ART. 1, SECTION 20.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Zimmerman*, No. 225984, 2002 WL 483428 (Mich. Ct. App. Mar. 29, 2002) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these three issues to the Michigan Supreme Court. Petitioner also raised a fourth claim alleging ineffective assistance of appellate counsel. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Zimmerman*, 467 Mich. 895, 654 N.W.2d 327 (2002).

5.     Petitioner, proceeding *pro se*, filed an application for the writ of habeas corpus in this Court on August 12, 2003. As grounds for the writ, petitioner's application claims that he suffered a constructive denial of counsel by counsel's failure to meet and confer with him prior to trial. On March 4, 2004, the Court entered an Order granting in part petitioner's motion to dismiss and holding the case in abeyance pending his exhaustion of the claim raised in the petition.

6.     On April 5, 2004, petitioner filed motions for new trial and an evidentiary hearing in the trial court. The motions were denied on April 15, 2004. On January 24, 2005, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the ineffective assistance of trial and appellate counsel claims raised in his *pro per* brief on appeal and in his *pro se* habeas petition. Petitioner also sought an evidentiary hearing to develop facts in support of his claim. On February 23, 2005, the trial court denied the motion, concluding that petitioner's trial counsel claim had already been decided against petitioner in his direct appeal and thus was barred by MICH. CT. R. 6.508(D), and that his appellate counsel claim was without merit.

3

*See People v. Zimmerman*, No. 99-002112-01 (Wayne County, Mich., Cir. Ct. Feb. 23, 2005).

Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan

Supreme Court, raising the following claims:

> I.   DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS BY THE DEFICIENT PERFORMANCE OF HIS TRIAL AND APPELLATE COUNSEL.
>
> II.  THE TRIAL COURT ABUSED IT'S DISCRETION WHEN IT DENIED DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT WITHOUT FIRST CONDUCTING A *GINTHER* HEARING.

The appellate courts denied petitioner's applications for leave to appeal in standard orders, based

on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR

6.508(D)." *People v. Zimmerman*, 477 Mich. 978, 725 N.W.2d 339 (2006); *People v. Zimmerman*,

No. 268409  (Mich. Ct. App. Aug. 16, 2006).

7.   On April 27, 2007, petitioner, through counsel, filed an amended application for the

writ of habeas corpus, again raising the now-exhausted ineffective assistance of trial and appellate

counsel claims raised in his initial petition, as well as a motion for evidentiary hearing.  Respondent

filed an answer to the amended petition on December 3, 2007, contending that petitioner's claims

are barred by petitioner's procedural default in the state courts.  On November 12, 2009, I entered

a Report recommending that the Court reject respondent's procedural default argument and order

an evidentiary hearing.  On January 7, 2010, the Court entered an Order adopting my Report and

remanding the matter to me to conduct an evidentiary hearing.

8.   An evidentiary hearing was held on May 19, 2010, at which petitioner, his trial

counsel, and an attorney who had represented petitioner on another matter testified.  Petitioner filed

a post-hearing supplemental brief on January 12, 2011, and respondent filed a post-hearing brief on

4

February 1, 2011.

B.    *Factual Background*

1.    *The Trial Evidence*

Petitioner's convictions arise from the shooting deaths of two victims on February 1, 1999,

at a party at which a number of people were watching the Super Bowl and gambling. Prior to trial,

petitioner signed and filed a waiver of jury trial. The evidence against petitioner consisted primarily

of the testimony of people present at the party. Petitioner presented an alibi defense, although he

did not himself testify. The evidence adduced at trial was accurately summarized in petitioner's

brief on direct appeal:

> . . . . Joseph Chancellor [testified that] [o]n January 31, 1999, a number of
> people came to a house to watch the Super Bowl and play dice. At the house were
> Defendant, Zimmerman, Eugene Hill, a/k/a Kool Aid, Marcel Thomas, a/k/a Rew
> and Marcel. In all there were 10 or 11 people. Defendant was wearing a bulletproof
> vest. Eugene Hill and Defendant were playing dice with other people. At about
> 10:00 p.m. the witness went to the back room to take a nap along with Keon Long.
> Later he heard Defendant and Hill arguing over the dice game. Defendant accused
> Hill of cheating. Later that evening he heard 16 or 17 shots coming from what
> sounded like two guns. He and Keon jumped up and hid in the closet. Prior to the
> shooting Eugene Hill came into the bedroom with a large number of bills in his
> hands, said something, and left. This occurred at about 5:10 a.m. About 15 minutes
> after the shooting he emerged from the closet and saw the bodies of Djuan and
> Marcel laid out in the living room. Keon asked a question of Marcel who was still
> alive but shot in the eye, chest and leg. Defendant then objected to the question
> Keon asked and the answer Marcel gave in response on the basis that it was hearsay.
> The Judge overruled it on the basis that it was a dying declaration. Keon asked,
> "Who did this to you?" and Marcel answered, "Rah, Rah." On cross exam the
> witness admitted never having told the police that he heard Keon ask the victim who
> had shot him. Finally he admitted to the court that he was not truthful about his
> testimony given in court on this day. He also admitted describing to the police
> [w]hat Defendant wore that night but never mentioned that he was wearing a
> bulletproof vest. After a break from the testimony there was a discussion about
> whether or not an alleged statement given by the victim to the witness would be
> allowed on the basis of hearsay. . . . The Judge . . . decided to allow the prosecutor
> to ask questions about the hearsay statement pending future decision on her part to
> allow it in or not. The witness then took the stand and testified that on the night in

5

question the victim entered the bedroom where he was sleeping, turned on the light awakening him, and announced he had "broken the dice game" by winning $1,500 from defendant. On recross exam the witness claimed he told the truth to the police officer when he told him that he lived on Clements Street. When Defense Counsel tried to refresh his recollection with the statement the witness first wanted to read it but as soon as he found out that he gave another address from defense counsel, he refused to have his recollection refreshed by refusing to read it. He further refused to have his recollection refreshed on how many shots he told the officer were fired on the night in question. Then he stated that even though he testified in court that Defendant had a gun on him on the night in question, he once again refused to have his memory refreshed that he had denied that he did not see anyone with a gun on that night by not wanting to see his statement.

On the next day of trial both sides once against reargued the admissibility of Mr. Chancellor's hearsay testimony from the victim about winning $1,500 from him. Finally the court decided to admit the statement as an excited utterance.

The first witness called was Yung A. Chung, Wayne County Medical Examiner. He testified that both victims died of multiple gunshot wounds. Then the mothers of the two victims testified, identifying the bodies.

Then two police officers testified to what they saw and collected at the scene of the crime. Both officers testified to seeing illegal drugs in the livingroom where the homicide occurred. The next witness was a ballistics expert, Danny Reed, who testified that from all of the shell casings taken from the crime scene that the casings were shot from as few as three guns and as many as seven guns.

Prior to the testimony taken at the next day of trial, there were a series of motions before the Court. First the prosecutor moved to introduce "new" physical evidence to the trial court. The evidence was a set of keys to a van owned and given by the victim, Mr. Hill, to one of the witnesses at trial, Keon Long, just prior to the killing. This set of keys would prove essential to the prosecutor later in the trial to rebut Defendant's alibi defense. Next, the prosecutor admitted filing a late notice (on November 8 in the middle of trial) on the Defendant to introduce MRE404(b) evidence. First, the prosecutor admitted that he filed it late due to his own error of thinking it was not 404(b) evidence. The evidence was to show that the Defendant and the victims had a history of disagreements between them concerning the illegal drug trade. Furthermore he wanted to introduce evidence that defendant regularly carried two 9 mm guns with him. Defense counsel vehemently objected to the evidence and moved to dismiss the case if the Judge allowed in the evidence. Defendant counsel objected on the basis of lack of timely notice, because the evidence was not newly discovered, and because the prejudice far outweighed its probative value. The Judge then declined to rule on the motion to introduce the evidence and Defense motion to dismiss until later. The first witness called was a police officer who collected spent bullet shells at the sene of the crime. The next witness was Andre Paige, the caretaker of the apartment building where the homicides in question occurred. He testified that at 5:40 a.m. he heard shots ring out and began to yell at the apartment from which the sounds came. He then saw Keon

6

and Joseph run out the door saying that someone had come in and killed these fellows. The last witness for the day was Angela McDuell. She testified that she lived in a building next door to the apartment building in question and that at around 5:30 in the morning she heard shots ring out and saw two persons running from the building.

On the next day of trial the first witness called was Keon Long. He testified that on the night in question Eugene Hill approached him and told him to put something in his van. He gave him his keys and the witness did what Mr. Hill asked. He then left the van open and did not return the keys to Mr. Hill. Mr. Hill then never left in that van until he was killed that night. He then turned the keys over to Sergeant Fleming after Mr. Hill was shot and killed. That night the defendant, Mr. Hill and Punkin were gambling with dice. He then went to his bedroom in the house during the half time of the Super Bowl. Before he went to sleep he heard Mr. Hill and defendant arguing. He then went to sleep until Mr. Hill woke him in the room with money in his hand. When he began to relate what Mr. Hill told him Defense Counsel objected on the basis of hearsay. The Prosecutor and the Court reminded defense counsel that the Judge had already ruled on that testimony earlier as being admissible. He then stated that he had just won $1,500 from Defendant. He then testified that Defendant was wearing a bulletproof vest that night. He also testified that defendant was carrying a 9 mm and a .380 caliber gun that night. The Defendant lifted his shirt to show them to the witness. After Mr. Hill disturbed his sleep, the witness fell back asleep until he was awakened by gunshots. He heard 15-16 gunshots. He then heard Defendant say, "Ha, ha, bitch, it's not funny now." He and Joseph then both leapt into the closet to hide. He then proceeded into the living room where the two victims were laying shot. Mr. Hill was unconscious but Mr. Thomas was conscious. He asked him who did it, and his answer was "Rash." He saw bullet holes in him in his eye, chin, chest and legs. He had to ask him three times before he got a response. Defense counsel objected to the statement on the basis of hearsay and the Court admitted it on the basis of a dying declaration. He then ran to call the police. In a statement he gave to the police right after the incident, the witness admitted not telling the police who did it and claimed Mr. Thomas could not answer his question. In a second statement he implicated Defendant and claimed Mr. Thomas answered his question. He claimed that he did not disclose Defendant's identity because he was still out in the streets. Once Defendant was apprehended, he then gave them the full story. On cross exam the witness admitted that the officers threatened to charge him with possession of drugs unless he testified in court against defendant. He also admitted that he received immunity from being prosecuted for anything he testified to in this case in open Court. He also admitted that he had lied on his first statement to the police. He then denied telling the officer in his first statement that he heard only 8-10 shots, as the statement provided. Then he stated that he did not tell the Officer in the first statement about the victim identifying "Rash, Rash," as his assailant, because he did not read the statement over carefully after he signed it stating he had read the statement, and even though the statement asked whether he could think of anything

7

else to help in the case. Then he admitted stating in his first statement that when the officer asked him if Marcel ever said who shot him, the witness's answer was, "I asked him but he couldn't answer." When asked if he was telling the truth when he gave that statement, the witness said "Yes, but it's supposed to be more to it." Then he retracted when he stated that actually the statement was a lie.

The next witness called was Edward Morris, Jr. He testified that he lived downstairs from Defendant and his girlfriend. On the night in question he heard someone come home around 4:30-5:00 a.m. and that person was let into the door. He also stated that he was not sure what time it actually was but the next day defendant asked him to state that it was between 4:30-5:00 a.m.

The next witness was Sonja Crosby. She testified that she arrived at defendant's residence between 4:00-5:30 a.m. on the night in question and had to wait a long time to purchase drugs. Finally Defendant came out and tried to influence her into testifying that Mr. Hill had dropped off Defendant at his home that night. When the prosecutor asked the witness if she had ever seen defendant in the past with a gun, once again defense counsel objected on the basis of relevance renewing his objection he had made when he moved for dismissal. Finally she sustained the objection.

The last witness the Prosecutor called was a police officer, James Fleming, who testified that he received the keys to Mr. Hill's car from Keon Long. Then the Prosecutor rested his case. Then both parties argued defendant's motion for a directed verdict on the first degree murder charges and the Court denied the motion.

Then Defendant called his only witness, Ranaisa Chaney. She testified that on the night in question Defendant returned home at 4:30 in the morning. She saw that Mr. Hill had dropped off defendant at their residence. Then after the Defendant himself indicated that he did not wish to take the stand nor did he wish to call any other witnesses, the defense rested.

Def.-Appellant's Br. on Appeal, in *People v. Zimmerman*, No. 225984 (Mich. Ct. App.), at 1-10.

The trial court found defendant guilty of the lesser offense of second degree murder, explaining:

The prosecution has proven beyond a reasonable doubt that the defendant killed or participated in the killing of Marcel Thomas and Eugene Hill. Mr. Long and Mr. Chancellor are credible on the issues that Mr. Hill won Fifteen Hundred Dollars from the defendant, that he accused – that the defendant accused Mr. Hill of cheating and was angry, that the defendant was present when Messers [sic] Hill and Thomas were killed because they heard his voice and the words were words of anger and revenge. The defendant had guns of the caliber used in the killing in his possession that night. The defendant attempted to have at least two people lie on his behalf.

This Court does not believe that Mr. Long and Mr. Chancellor were involved

in the killing of Mr. Thomas and Mr. Hill.  All four men were friends and lived together.  There was no evidence of a motive.  Mr. Long and Mr. Chancellor were seen leaving the apartment and they did not have any weapons on them.  And there were no guns found in the apartment.  There is no evidence that neighbors or strangers came into the apartment to rob anyone.  No one heard strange noises or threats of robbery and the police found more than Twenty-two Hundred Dollars in cash and drugs in the apartment.  Ms. Chaney's testimony is not persuasive because her testimony is controverted by that of Mr. Morris and Miss Crosby and the testimony of Mr. Long that he had the keys to Mr. Hill's vehicle.

I am not convinced beyond a reasonable doubt that this was a premeditated killing.  The defendant may or may not have left the apartment and returned.  He may have never left the apartment, became increasingly angry about his gambling losses and the belief that he had been cheated.  Words may have been said that caused him to erupt and shoot Mr. Hill and Mr. Thomas.  I find the defendant guilty of Second-degree Murder of Marcel Thomas and Eugene Hill and guilty of Felony Firearm in committing these murders.

Trial Tr., dated 12/14/99, at 13-15.

2.    *Evidentiary Hearing Testimony*

At the evidentiary hearing, petitioner first presented the testimony of retired defense attorney Anne Clair Van Ash.  Ms. Van Ash testified that in the summer of 1999 she was appointed to represent petitioner on a probation matter.  When she met with petitioner about that matter, petitioner was upset because he had to go to court in a week on the first degree murder charge and nobody had come to visit him.  She wrote a letter to petitioner's defense counsel in the murder case, David Cripps, expressing petitioner's concerns.  She also attempted to call Mr. Cripps.  She received no response to her letter.  Petitioner did not ask her to represent him in the murder case, and she would not have been able to do so in any event, because she was only a Level One attorney.  *See* Evid. Hr'g Tr., at 4-13.

On cross-examination, Ms. Van Ash testified that petitioner must have told her that he waived his jury but was having second thoughts about that decision, because these facts were set forth in her letter to Mr. Cripps.  She had no recollection of petitioner discussing the decision to

9

waive his jury trial, nor did her letter to Mr. Cripps include any directive regarding the jury trial issue. Ms. Van Ash admitted that her only information about Mr. Cripps's actions came from petitioner himself, and that petitioner neither tried to retain her to represent him in the murder case nor did he ask her to recommend another attorney. *See id*. at 13-18.

Petitioner next testified on his own behalf at the evidentiary hearing. Petitioner testified that he was arrested for questioning on the day of the murders, February 1, 1999. At some point he was charged with two counts of first degree murder, and he retained Mr. Cripps to represent him. He first met him in court, in the bull pen, on the date that he signed his jury trial waiver and a date was set for trial. Mr. Cripps advised him to accept a bench trial, because he worked good with the judge and the judge would not be swayed by sympathy. Two or three days later, he was transferred from the Wayne County Jail to the Riverside Correctional Facility in Ionia. During his time in Riverside and another Ionia facility, he did not have any visits from Mr. Cripps, nor did Mr. Cripps respond to his repeated attempts to contact him. Specifically, petitioner testified that he wrote letters to Mr. Cripps reconsidering his decision to waive a jury trial and asking Mr. Cripps to withdraw his waiver. He spoke with Ms. Van Ash about the matter, who attempted unsuccessfully to contact Mr. Cripps. His trial was originally scheduled for August 19, 1999, but he was not transported to Wayne County for trial on that date. His trial was rescheduled for October 7, 1999. Between August 19 and October 7 he did not meet with Mr. Cripps or discuss his case over the phone. *See id.* at 21-31.

On the day his trial started, Mr. Cripps came to him in the bullpen. At that time, Mr. Cripps told him it was too late to withdraw his jury trial waiver. Petitioner testified that during the trial he "basically did everything except question the witnesses." *Id*. at 32. Every question counsel asked came from petitioner. Mr. Cripps did not tell the judge that petitioner wished to withdraw his jury

trial waiver.  Petitioner assisted counsel in cross-examination, and he reviewed the police reports in the courtroom.  His trial was held on Fridays only, over the course of about two months.  During that time, he was being held in the Wayne County Jail.  Mr. Cripps came to visit him the day after the first witness testified, but did nothing more than give him the transcripts of the first witness's testimony.  He did not meet with Mr. Cripps at any other time other than in court.  Petitioner testified that he had evidence he wanted Mr. Cripps to follow up on.  Specifically, he wanted Mr. Cripps to get records of phone calls he made, and other witnesses he wanted to present to corroborate his whereabouts and to prove that one of the victims had his own keys to his truck.  More specifically, petitioner testified that he expected three men named Rob, Dan, and Eric to testify that they saw Hill on their street at about 12:00 on the night of the murders.  *See id.* at 32-39.

On cross examination, petitioner admitted that the first letter he wrote to appellate counsel concerning issues to be raised on appeal, sent in November 2000, did not mention trial counsel's failure to meet with him before trial.  Rather, this claim was not mentioned until a second letter in August 2001, after petitioner had discovered a case suggesting that he would be entitled to automatic reversal if counsel had never met with him before trial.  *See id.* at 39-43.  Petitioner admitted that even though Mr. Cripps was retained, he did not attempt to fire him or to obtain another attorney.  At no point did he inform the court that he desired to withdraw his jury trial waiver.  Further, when the trial was adjourned after the first day until November 5, petitioner asked to be returned to prison rather than the Wayne County Jail.  *See id.* at 43-47.

Respondent called petitioner's trial counsel, David Cripps, as a witness at the evidentiary hearing.  Mr. Cripps testified that he has been a criminal defense attorney since 1983 and that he has handled hundreds of murder cases.  He did not have any records remaining in his possession

regarding his representation of petitioner.  Mr. Cripps testified that before the jury trial waiver was filed he would have discussed the matter with petitioner, and that petitioner would have been questioned by the trial judge to establish that it was his decision to waive a jury.  His recommendation was based on the evidence in the case, particularly the fact that petitioner came to the dice game wearing a bulletproof vest and armed with two guns, which was "very, very close" to first degree murder.  He filed a notice of alibi and an alibi witness.  He was sure that he had gotten the name of the alibi witness from petitioner, because that's how an alibi defense comes about.  He filed a motion to quash and a brief in opposition to the prosecution's motion to introduce Rule 404(b) evidence.  He would have reviewed all discovery materials and any examination transcripts. *See id*. at 54-61.

On cross-examination, Mr. Cripps conceded that the majority of the murder trials he has handled have been jury trials.  Whether to have a jury or bench trial depends on the particular circumstances of the case.  He met with petitioner at least four different times on court dates prior to the case being called, in attorney interview rooms in the bull pen area.  He met with petitioner at least once, and possible more times, at the Wayne County Jail.  He and petitioner had "total discussions about the case."  It is his general practice to discuss with his clients the decisions of whether to waive a jury trial and to testify, because those decisions are totally the client's to make.  He specifically recalled discussing the jury waiver issue with petitioner.  Mr. Cripps testified that he would not have filed an alibi defense without talking to his client first.  He further testified that any  witnesses petitioner had provided he would have looked into, but it is hard to locate witnesses if all he is given is a first name without addresses or phone numbers.  Petitioner did not ask him to obtain any phone records. *See id*. at 61-74.

12

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

13

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

Here, however, the strictures of the AEDPA do not apply and petitioner's claims are subject to *de novo* review. The Courts of Appeals have issued conflicting decisions on whether a federal habeas court's holding of an evidentiary hearing obviates the deference mandated by § 2254(d). *Compare, e.g.*, *Matheney v. Anderson*, 377 F.3d 740, 747 (7th Cir. 2004) ("The evidence obtained in such a hearing is quite likely to bear on the reasonableness of the state courts' adjudication . . . but we do not see why it should alter the standard of federal review."), *with Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("AEDPA deference does not apply to [a] claim [when] [e]vidence of the [claim] was adduced only at the hearing before the magistrate judge."). The Supreme Court has recognized but declined to resolve this issue. *See Holland v. Jackson*, 542 U.S. 649, 652 (2004). However, in *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008), the Court adopted the Ninth Circuit's view and held that *de novo* review applies "whenever new, substantial evidence supporting a habeas claim comes to light during the proceedings in federal district court." *Id*. at 429. Because the Court is bound by the Sixth Circuit's determination, petitioner's claims are subject to *de novo* review.

However, while the Court does not review the state court decision for reasonableness, the clearly established law requirement referenced in § 2254(d) remains relevant to the Court's application of *de novo* review:

> While we consider such claims "de novo," that does not mean we review those claims as an original matter, as if the claims were raised on direct appeal. Rather, the

14

> claims of habeas petitioners, even on de novo review . . . , continue to be limited by the principles laid out in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny, which generally bar claims that require the application or announcement of "new rules" of law.

*Kater v. Maloney*, 459 F.3d 56, 58-59 (1st Cir. 2006). The *Teague* rule is "the functional equivalent" of the clearly established law requirement of § 2254(d)(1), *see Williams*, 529 U.S. at 379 (opinion of Stevens, J.), and thus a rule which fails to satisfy *Teague* will also fail to satisfy § 2254(d)(1). *See id*. at 380 (opinion of Stevens, J.); *id*. at 412 (opinion of O'Connor, J., for the Court). *See generally*, *Williams v. Cain*, 229 F.3d 468, 474-75 (5th Cir. 2000) (discussing relationship between *Teague* and § 2254(d)(1)).

D.    *Analysis*

1.    *Governing Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689;

15

*see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

Petitioner contends, nevertheless, that he need not show prejudice once he establishes that counsel was ineffective. Petitioner contends that counsel's failure to meet with him other than for brief periods of time amounted to a denial of counsel in the pretrial period, and that he is entitled to the presumed prejudice standard of *United States v. Cronic*, 466 U.S. 648 (1984), pursuant to which he need not establish prejudice on his ineffective assistance of counsel claims under the second prong of the *Strickland* test. The Court should disagree. The Supreme Court has limited the presumed prejudice standard to three types of ineffective assistance claims: (1) complete denial of counsel; (2) government interference with the right to counsel; and (3) conflicts of interest. *See Smith v. Robbins*, 528 U.S. 259, 287 (2000) (citing *Strickland*, 466 U.S. at 692; *Cronic*, 466 U.S. at 659 & n.25). The Supreme Court has stated that the first category–complete denial of counsel–encompasses both actual and constructive denials of counsel, and that a constructive denial

16

of counsel can occur where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. Petitioner argues that counsel's failure to meet with him in the month prior to trial constitutes a constructive denial of counsel under the first category.

The Supreme Court has recently explained, however, that for an ineffective assistance claim to come within this limited exception to *Strickland*, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). The distinction is between "bad lawyering" and "no lawyering," *Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990); *see also*, *Moss v. Hofbauer*, 286 F.3d 851, 861 (6th Cir. 2002), and the difference is not one of degree, but one of kind, *see Bell*, 535 U.S. at 697. Here, petitioner has not demonstrated that counsel completely failed to subject the prosecution's case to meaningful adversarial testing. Even under petitioner's version of events, counsel met with him at various pretrial proceedings and one time at the Wayne County Jail. Further, counsel apparently conducted some investigation, argued various matters on petitioner's behalf, and extensively cross-examined the prosecution's witnesses. *See Moss*, 286 F.3d at 859; *Martin v. Mitchell*, 280 F.3d 594, 613 (6th Cir. 2002); *Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir. 1998). All of petitioner's claims are run-of-the-mill pretrial and trial error claims subject to the *Strickland* framework. *See, e.g.*, *Patrasso v. Nelson*, 121 F.3d 297, 300 (7th Cir. 1997); *Gregory v. United States*, 109 F. Supp. 2d 441, 450 (E.D. Va. 2000). In short, "[t]he aspects of counsel's performance challenged by [petitioner] . . . are plainly of the same ilk as other specific attorney errors [the Supreme Court] ha[s] held subject to *Strickland*'s performance and prejudice components." *Bell*, 535 U.S. at 697-98.

*Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003), upon which petitioner relies, does not compel a contrary conclusion. In *Mitchell*, the Sixth Circuit concluded that *Cronic* required a

17

presumption of prejudice be applied to the petitioner's ineffective assistance claims. The court's conclusion was based on the fact that during the entire course of counsel's seven month representation, he had met with petitioner for only six minutes immediately prior to trial, and on the fact that in the month prior to trial counsel had been suspended from the practice of law, and thus did not appear at motion hearings or do any other work on the case. *See id*. at 742-44. Contrary to petitioner's argument, *Mitchell* is not controlling here. Unlike in *Mitchell*, petitioner's counsel was not suspended from the practice of law in the month leading up to the trial. And, unlike in *Mitchell*, petitioner does not allege that counsel failed to meet with him at all; rather, petitioner only claims that counsel failed to meet with him more than briefly. The *Mitchell* court itself distinguished that case from the circumstances present here, noting that if the issue had been only the failure to meet and prepare in the thirty-day period prior to trial, "it might have been proper to apply the *Strickland* analysis, for as *Bell* notes, counsel's failure in particular instances is evaluated under *Strickland*." *Mitchell*, 325 F.3d at 742. The *Mitchell* court also distinguished the Sixth Circuit's prior decision in *Dick v. Scroggy*, 882 F.2d 192 (6th Cir. 1989). *See Mitchell*, 352 F.3d at 744. In *Dick*, the court applied *Strickland* to a claim based on counsel's failure to consult with the petitioner at all except for a 30-45 minute meeting the day before trial. *See Dick*, 882 F.2d at 197. Petitioner's case here is more akin to *Dick* than the egregious circumstances involved in *Mitchell*. Indeed, petitioner's case is even less egregious than *Dick*. Even accepting petitioner's version of events,[1] Mr. Cripps

---

[1]In this respect, I note that I find Mr. Cripps to be credible regarding his preparation of the case. Petitioner's assertion that counsel failed to discuss the case with him in any substantive respect is belied not only by Mr. Cripps's testimony at the evidentiary hearing, but by the state court record. Mr. Cripps filed a notice of alibi and presented an alibi defense, vigorously argued various motions on petitioner's behalf, and extensively cross-examined the prosecution witnesses. These actions evince a level of preparation that could not have been achieved had counsel never discussed the substance of the case with petitioner.

18

met with petitioner four or five times in court and at least once in the Wayne County Jail.

In short, *Mitchell* is a case involving unique facts–a complete failure to consult combined with counsel's suspension from the practice of law immediately prior to trial–and its holding is cabined by those unique facts. *See Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007); *Johnson v. Bradshaw*, 205 Fed. Appx. 426, 432-33 (6th Cir. 2007); *Willis v. Lafler*, No. 05-74885, 2007 WL 3121542, at *29 (E.D. Mich. Oct. 24, 2007) (Edmunds, J., adopting Report of Komives, M.J.). *Mitchell* does not cast doubt on the general rule that claims of ineffective assistance of counsel based on counsel's failure to consult with the petitioner or to adequately prepare are governed by the *Strickland* test. *See, e.g., United States v. Rogers*, 13 Fed. Appx. 386, 388-89 (7th Cir. 2001) (no presumption of prejudice with respect to claim based on counsel's repeated tardiness, lack of preparation, and failure to meet with petitioner, where no proceedings took place without counsel present, counsel actively participated in the proceedings, and counsel subjected the prosecutor's case to adversarial testing); *cf. Chambers v. Maroney*, 399 U.S. 42, 53-54 (1970) (no prejudice found although counsel first appeared only a few minutes prior to trial). Accordingly, the Court should conclude that petitioner's claims are governed by *Strickland*.[2]

2.     *Trial Counsel*

Petitioner's challenges to trial counsel's representation break down into two categories. First, petitioner contends that counsel generally failed to prepare for trial and investigate his case. Second, petitioner contends that counsel failed to act on his request to withdraw his jury trial waiver. The Court should conclude that petitioner is entitled to relief on neither claim.

---

[2]A separate issue is whether petitioner must show prejudice specifically with respect to his jury waiver claim. That issue is addressed in connection with the underlying claim.

### a.  Failure to Investigate/Prepare

Petitioner first contends that Mr. Cripps failed to meet with him, investigate the case, and prepare for trial.  At the outset, as noted above, *see supra* note 1, the state court record evidencing Mr. Cripps's vigorous and thorough defense of petitioner belies petitioner's claim that counsel failed to hold any substantive discussions with him regarding the case.  This conclusion is buttressed by the fact that petitioner never sought to fire Mr. Cripps, despite Mr. Cripps having been retained by petitioner, and by the fact that petitioner never expressed any concern to the court.  Nevertheless, even assuming *arguendo* the truth of petitioner's testimony concerning the number of meetings he had with counsel, petitioner cannot establish his entitlement to habeas relief on this claim. "[B]revity of time spent in consultation, without more, does not establish that counsel was ineffective."  *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980).  Nor is there any "case establishing a minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel."  *United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988) (internal quotation omitted).  Absent specific allegations establishing both that the time counsel spent with petitioner was inadequate and that petitioner was prejudiced by counsel's inadequate consultation, petitioner is not entitled to habeas relief.  *See Neal v. Acevedo*, 114 F.3d 803, 806 (8th Cir. 1997); *United States v. Soto-Alvarez*, 958 F.2d 473, 478 (1st Cir. 1992); *United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988); *Adanandus v. Johnson*, 947 F. Supp. 1021, 1095 n.17 (W.D. Tex. 1996); *United States v. Wright*, 845 F. Supp. 1041, 1072 (D.N.J. 1994).

Apart from the jury waiver issue discussed below, the only specific failure of counsel as a result of the inadequate preparation time was counsel's alleged failure to find three witnesses who, petitioner asserts, could have testified that one of the victims, Eugene Hill, was on their street at

20

around midnight on the night of the murders.  Presumably, this testimony would have contradicted the testimony of Keon Long that Hill had given him the keys to the van and had not left in the van that evening, which testimony in turn contradicted petitioner's alibi defense that Hill had driven petitioner home in the van at around 5:00 a.m.  *See* Evid. Hr'g Tr., at 37-38.  However, petitioner has failed to show that counsel was ineffective in failing to locate these witnesses.  At the evidentiary hearing, petitioner testified only that he "expected a guy named Rob, a guy named Dan . . . and a guy named Eric to testify" at trial.  *Id*. at 37.  Nowhere in the record, either in state court or this court, has petitioner provided even a last name for these witnesses, much less any indication that he did or could have provided counsel with information to locate these witnesses.  As Mr. Cripps testified, "[t]he difficulty, if he gives you first names without addresses or phone numbers it's hard to locate them."  *Id*. at 73.  Moreover, petitioner's current claim is belied by his statements at trial that it was his decision not to call any other witnesses:

| | |
|---|---|
| MR. CRIPPS: | I also advised him he can call any other witnesses that he wants.  But we don't want to call any at this time, but it's his final decision not to call anybody else. |
| THE COURT: | Is that correct, sir? |
| THE DEFENDANT: | Yes. |

Trial Tr., dated 12/6/99, at 184.

Moreover, petitioner has failed to meet his burden of demonstrating that he was prejudiced by the absence of these witnesses.  To meet this burden, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits."  *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir.

1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).  Here, petitioner has presented no affidavit from these purported witnesses establishing that they would have been able to testify or the substance of their purported testimony.  Further, and "[s]ignificantly, [petitioner] did not produce these people at the evidentiary hearing, nor did he provide addresses or telephone numbers. Accordingly, we were unable to assess the proposed testimony firsthand, under cross-examination, in order to evaluate its veracity and potential impact on the outcome of the trial."  *United States v. Robles*, 814 F. Supp. 1233, 1246 (E.D. Pa. 1993) (citing *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir.1987)).

Petitioner also contends that he asked petitioner to obtain his telephone records.  Again, even assuming that petitioner's account is accurate, petitioner cannot show that he was prejudiced by counsel's failure to obtain these records.  Petitioner testified at the evidentiary hearing that after Hill dropped him off at home, he called Hill to make sure that Hill had gotten home safely, and that his phone records could have confirmed this call.  *See* Evid. Hr'g Tr., at 36.  Even if the phone records would have confirmed a call to Hill at the time petitioner alleges, however, there is not a reasonable probability that the result of the trial would have been different.  By plaintiff's own testimony, he called Hill using his cell phone.  *See id.*  A call from petitioner's cell phone would do nothing to confirm petitioner's alibi that he was at home; the call could have been made from any location.  Thus, even if petitioner asked counsel to subpoena these records and counsel was ineffective for failing to do so, petitioner cannot establish prejudice.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his claim that counsel failed to meet and confer with him about the case prior to trial.

*b.  Jury Trial Waiver*

22

Petitioner's more significant claim is that counsel was ineffective for failing to seek to withdraw his jury trial waiver. Although this issue presents a closer question, the Court should conclude that petitioner has failed to meet his burden of demonstrating that counsel was ineffective with respect to the jury waiver issue.

At the outset, to the extent petitioner challenges counsel's initial advice to him to waive a jury trial, petitioner cannot demonstrate that counsel's performance was deficient. Such advice is the type of strategic decision which is particularly difficult to attack. *See Walendzinski v. Renico*, 354 F. Supp. 2d 752, 757-58 (E.D. Mich. 2005) (Gadola, J.); *cf. Sowell v. Bradshaw*, 372 F.3d 821, 837-38 (6th Cir. 2004). Mr. Cripps explained at the evidentiary hearing his reasons for recommending a jury trial waiver, including the strength of the evidence against petitioner and the fear that a jury would, based on a sympathy or a lack of full understanding of the law, convict petitioner of first degree murder. *See* Evid. Hr'g Tr., at 57-59, 66-67. That petitioner or his current counsel now challenge those reasons does not render Mr. Cripps's advice unreasonable at the time it was given. *Cf. Harrington v. Richter*, 131 S. Ct. 770, 789-90 (2011).[3]

The more difficult question is whether counsel was ineffective for failing to follow petitioner's instructions that he seek to withdraw his jury trial waiver. On this issue, the Court

---

[3]Current counsel characterize's Mr. Cripps's explanation as "very unpersuasive and illogical." Pet'r's Supp. Br., at 12. I find nothing unpersuasive or illogical in Mr. Cripps's explanation. Although petitioner's counsel attempted to have Mr. Cripps explain a general rule for when he would seek a bench trial versus a jury trial, as Mr. Cripps testified that decision in any given case depends on the circumstances of that case, including "what the nature of the proofs are, what particular Judge you are in front of," and the like. Evid. Hr'g Tr., at 63. Mr. Cripps explained that "[o]n this case, I believe a jury would have convicted of first degree murder. Strong likelihood because you had multiple defendants [sic–victims], you had a man who came to this party armed with a bullet proof vest and possibly more than one gun. So you can see what the jury would read the intention there was." *Id.* at 66; *see also*, *id.* at 57-59. There is nothing illogical in this explanation. Rather, it reflects the reasoned explanation of an experienced criminal defense attorney who considered the matter.

23

should conclude that petitioner has failed to establish that counsel's performance was deficient, because the proofs do not establish that petitioner actually instructed counsel to seek withdrawal of the jury trial waiver. Ms. Van Ash's testimony established only that petitioner indicated to her second thoughts about the decision to waive a jury trial. She did not testify that petitioner definitively indicated his desire to withdraw the jury trial waiver, nor did her subsequent letter to Mr. Cripps indicate that petitioner desired to withdraw his jury trial waiver. *See* Evid. Hr'g Tr., at 14-15 & Pet'r's Evid. Hr'g Ex. 1. Petitioner's testimony that he asked counsel to withdraw the jury waiver well in advance of trial is not credible. Nothing in the record supports this assertion other than petitioner's own testimony. No letters reflecting such a request were introduced, petitioner never complained to the court about his jury trial waiver, and indeed at the evidentiary hearing petitioner's counsel did not ask a single question of Mr. Cripps relating to petitioner's alleged request to withdraw the jury trial waiver. While I have no doubt that the decision was a difficult one for petitioner and that he may have had second thoughts about the matter, the record is insufficient for petitioner to meet his burden of demonstrating that counsel failed to follow an instruction to seek withdrawal of the jury trial waiver. Accordingly, the Court should conclude that petitioner has failed to demonstrate that counsel's performance was deficient.

Likewise, the Court should conclude that petitioner must establish prejudice with respect to this claim, and that he was failed to do so. The denial of a jury trial, it is true, is a structural error which is ordinarily not subject to harmless error review. *See United States v. Santos*, 201 F.3d 953, 959 (7th Cir. 2000) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 280-82 (1993); *Rose v. Clark*, 478 U.S. 570, 578 (1986)). This does not necessarily mean, however, that an error by counsel which results in a structural error obviates the need to show prejudice under *Strickland*. This is an issue

24

on which the courts have divided. *Compare, e.g.*, *Purvis v. Crosby*, 451 F.3d 734, 740-43 (11th Cir. 2006) (prejudice must be shown under *Strickland* even where counsel's ineffectiveness results in a structural error); *Tennyson v. Klopotoski*, No. 09-1216, 2011 WL 232151, at *7 n.8 (W.D. Pa. Jan. 24, 2011) (same), *with Owens v. United States*, 483 F.3d 48, 64-65 (1st Cir. 2007) (prejudice presumed when counsel's performance results in a structural error); *McGurk v. Stenberg*, 163 F.3d 470, 475 (8th Cir. 1998) (same). In *Johnson v. Sherry*, 586 F.3d 439 (6th Cir. 2009), the court considered a claim that counsel's performance led to a denial of the petitioner's right to a public trial, a structural error. The court remanded the case to the district court for an evidentiary hearing to determine whether counsel's performance was deficient, and therefore did not definitively resolve the prejudice issue. The court strongly suggested, however, that if a structural error is shown by counsel's deficient performance, then prejudice should be presumed. *See id.* at 447 ("Consequently, if evidence reveals that counsel's failure to object fell below an objective standard of reasonableness, there is a strong likelihood that counsel's deficient performance would be deemed prejudicial.").       The Sixth Circuit's dictum in *Sherry* does not compel the conclusion that petitioner need not show prejudice, because a more recent decision by the Supreme Court makes clear that a *Strickland*

ineffective assistance claim does not incorporate the underlying standards of the substantive error resulting from counsel's conduct. In his dissent, Judge Kethledge aptly observed that the majority's assertion that because the right to a public trial is a structural guarantee that prejudice could be presumed "drives right past the distinction between a [public trial] claim and a *Strickland* one. What the majority says is true enough for a [public trial] claim, but Johnson's petition undisputedly turns on a *Strickland* one; and *Strickland* repeatedly and unequivocally says that *actual prejudice* is

required." *Id*. at 449 (citing *Strickland*, 466 U.S. at 693, 694) (Kethledge, J., dissenting). And Judge Kethledge's observation is supported by the Supreme Court's ineffective assistance of counsel and structural error jurisprudence. For instance, in all of the cases in which the Supreme Court has set forth the circumstances in which prejudice from counsel's deficient performance may be presumed, it is has never set forth an underlying structural error caused by counsel's performance as a reason for presuming prejudice; only complete actual or constructive denial of counsel or a conflict of interest suffices. *See Wright v. Van Patten*, 552 U.S. 120, 124-25 (2008); *Florida v. Nixon*, 543 U.S. 175, 189-90 (2004); *Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *Roe v. Flores-Ortega*, 528 U.S. 470, 482-83 (2000); *Smith v. Robbins*, 528 U.S. 259, 287 (2000); *Penson v. Ohio*, 488 U.S. 75, 88 (1988); *Cronic*, 466 U.S. at 659-60; *Strickland*, 466 U.S. at 692. Presuming prejudice on the basis that counsel's deficient performance resulted in a structural error is inconsistent with this precedent, as well as with the *Strickland* court's unequivocal holding that, denial of counsel and "[c]onflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.

Further, the Supreme Court has held that even structural errors, when defaulted, require a showing of prejudice. In *Francis v. Henderson*, 425 U.S. 536 (1976), the Court held that a petitioner who procedurally defaulted his claim of racial bias in the selection of the grand jury must show cause for, and prejudice attributable to, his default before he could obtain federal habeas review of the claim. *See id*. at 542. A showing of prejudice was required, the Court explained, even though the defaulted claim involved one of structural error: "'The presumption of prejudice which supports the existence of the right is not inconsistent with a holding that actual prejudice must be shown in

26

order to obtain relief from a . . . waiver for failure to assert it in a [procedurally proper] manner.'" *Id*. at 542 n.6 (quoting *Davis v. United States*, 411 U.S. 233, 245 (1973)).  Thus the federal courts, including the Sixth Circuit, uniformly hold that "a finding of structural error does not obviate a petitioner's obligation to show prejudice when attempting to overcome a state procedural default." *Hunt v. Houston*, 563 F.3d 695, 704 n.2 (8th Cir. 2009); *accord Ward v. Hinsley*, 377 F.3d 719, 725-26 (7th Cir. 2004); *see also*, *Keith v. Mitchell*, 455 F.3d 662, 674-75 (6th Cir. 2006).  There is no reason why, and certainly no suggestion in the Supreme Court's cases that, this conclusion should be altered when the context is not prejudice to overcome a procedural default but prejudice to establish counsel's ineffectiveness.  As the Eleventh Circuit observed in *Purvis*, *supra*:

> For the same reasons that prejudice cannot be presumed in order to satisfy the prejudice requirement when an objection to structural error was not made at trial, it cannot be presumed to satisfy the prejudice component of an ineffective assistance claim arising from the same failure to preserve the structural error. Otherwise, the Supreme Court's holdings in the *Francis* and *Davis* decisions would be pointless. Any defendant who could not make the prejudice showing necessary to have a defaulted claim of structural error considered could bypass that requirement by merely dressing that claim in ineffective assistance garb and asserting that prejudice must be presumed. We are not inclined to believe that the Supreme Court's decisions in *Davis* and *Francis* are pointless.

*Purvis*, 451 F.3d at 743.  Indeed, both the Supreme Court and the Sixth Circuit have recognized the congruence between the procedural default cause and prejudice test and the *Strickland* test for ineffective assistance of counsel.  *See Harrington*, 131 S. Ct. at 788 ("An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care."); *Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009) ("The prejudice analysis for the procedural default and the prejudice analysis for the ineffective assistance of counsel argument are sufficiently similar to treat as the same in this context.").

27

Of course, any inconsistency between the Sixth Circuit's decision in *Johnson* and the Supreme Court's decisions in *Francis* and the *Strickland* line of cases would not alone justify this Court in failing to follow the dictum of *Johnson* respecting the presumption of prejudice inquiry. The Supreme Court's recent decision in *Premo v. Moore*, 131 S. Ct. 733 (2011), however, makes clear that Judge Kethledge's dissenting view in *Johnson* is correct. In *Premo*, the petitioner had pleaded no contest to felony murder. He subsequently filed a habeas petition claiming that counsel was ineffective for failing to move to suppress a coerced confession introduced in violation of *Arizona v. Fulminante*, 499 U.S. 279 (1991). The Ninth Circuit granted habeas relief, concluding that the state court's decision that counsel's failure to move to suppress the statement was not ineffective was both an unreasonable application of *Strickland* and contrary to *Fulminante*. *See Premo*, 131 S. Ct. at 738-39. In reversing this decision, the Supreme Court made clear that the Ninth Circuit had erred by incorporating the standard governing the underlying substantive violation of a coerced confession set forth in *Fulminate* into the *Strickland* inquiry. With respect to the first prong of the *Strickland* inquiry, the Court explained that "*Fulminante* may not be so incorporated into the *Strickland* performance inquiry," because "*Fulminante*–which involved the admission of an involuntary confession in violation of the Fifth Amendment–says nothing about the *Strickland* standard of effectiveness." *Id*. at 743. The Court also rejected the Ninth Circuit's reliance on *Fulminante* to establish prejudice. The Court explained that "there is no sense in which the state court's finding could be contrary to *Fulminante*, for *Fulminante* says nothing about prejudice for *Strickland* purposes[.]" *Id*. at 744. Importantly, the Court held that the standard for prejudice based on admission of an involuntary confession set forth in *Fulminante* "cannot apply to determinations of whether inadequate assistance of counsel prejudiced a defendant who entered into a plea

agreement," *id.*, a determination governed by *Strickland*. The Supreme Court thus found error in the Ninth Circuit's incorporation of the prejudice standard governing the underlying error caused by counsel into the *Strickland* prejudice inquiry. This is precisely what is done by *Johnson* and other cases presuming prejudice where counsel's performance results in a structural error. *Johnson*, already on shaky foundation in light of *Francis v. Henderson* and the *Strickland* line of cases, simply cannot survive *Premo*.[4]   Accordingly, the Court should conclude that, even if Mr. Cripps's performance were deficient, petitioner must show prejudice.

Turning to the prejudice inquiry, as noted above to establish prejudice petitioner must show that, but for counsel's failure to seek withdrawal of his jury trial waiver, there is a reasonable probability that the result of his trial would have been different. The Court should conclude that petitioner cannot make this showing. Petitioner describes the case against him as very weak because "there was no physical evidence linking him to the crime, and the lay witnesses against him were a long line of drug addicts and drug dealers whose credibility was very suspect." Pet'r's Supp. Br., at 8. While there was no physical evidence tying petitioner to the crime, the case against him was not weak. The two witnesses present in the home at the time of the murders testified consistently with each other, and petitioner presented no evidence that they had a motive to lie in implicating petitioner. Further, two disinterested witnesses testified that petitioner asked them to influence them to establish his alibi, exhibiting a consciousness of guilt. Petitioner's assertion that "his chances of acquittal were much greater if he were tried by a jury of his peers," *id.*, is untenable. On the

---

[4]Indeed, with minor alteration Judge Kethledge's reasoning fits comfortably within *Premo*: the Ninth Circuit's observation regarding prejudice under *Fulminante* "drives right past the distinction between a [coerced confession] claim and a *Strickland* one. What the [Ninth Circuit] says is true enough for a [coerced confession] claim, but [Moore's] petition undisputedly turns on a *Strickland* one; and *Strickland* repeatedly and unequivocally says that *actual prejudice* is required." *Johnson*, 586 F.3 at 449 (citing *Strickland*, 466 U.S. at 693, 694) (Kethledge, J., dissenting).

contrary, the more reasonable conclusion is the one which motivated Mr. Cripps's advice in the first place–that a jury trial would have resulted in conviction on the first degree murder charges. The trial judge found the prosecution witnesses credible regarding their testimony of the events leading to the murders, and petitioner offers no reason to think that a jury would have assessed their credibility any differently. And despite the trial court's conclusion that premeditation had not been shown beyond a reasonable doubt because petitioner "may or may not have left the apartment and returned. He may have never left the apartment, became increasingly angry about his gambling loses and the belief that he had been cheated. Words may have been said that caused him to erupt and shoot Mr. Hill and Mr. Thomas," Trial Tr., dated 12/14/99, at 14-15, there was ample evidence in the record from which the trier of fact, be it the trial judge or a jury, could have found premeditation and deliberation beyond a reasonable doubt. The circumstances of the killing, including the number of shots fired, the number of victims, and petitioner's saying "it's not funny now, bitch," would have supported a finding of premeditation and deliberation. In these circumstances, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had counsel sought withdrawal of his jury trial waiver. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      3.    *Appellate Counsel*

In his habeas application, petitioner also contends that his appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim on direct appeal. At the evidentiary hearing, petitioner did not call appellate counsel as a witness, nor did he present any evidence regarding appellate counsel's representation on direct appeal. He therefore can point to no evidence in the record to meet his burden of establishing that appellate counsel's performance

30

was deficient. Further, with respect to appellate counsel, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Because petitioner cannot carry his burden with respect to the underlying trial counsel claim, he cannot show that he was prejudiced by appellate counsel's failure to raise the claim on direct appeal.

E.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

31

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should grant in part and deny in part a certificate of appealability.  Specifically, the Court should conclude that the resolution of petitioner's ineffective assistance claim based on counsel's failure to meet with him and investigate the case is not reasonably debatable.  As explained above, the record belies petitioner's claim that Mr. Cripps failed to prepare for trial, and petitioner has

pointed to no evidence supporting defense theories or witnesses that further preparation or investigation would have revealed. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability with respect to this claim.

However, the Court should conclude that petitioner is entitled to a certificate of appealability with respect to his claim that counsel was ineffective for failing to seek withdrawal of his jury trial waiver. There is some evidence in the record, through petitioner's own testimony, that he instructed counsel to seek withdrawal of his jury trial waiver. This evidence is sufficient to make resolution of the first *Strickland* prong reasonably debatable. Further, as explained above it is reasonably debatable whether a showing that counsel was deficient in seeking to withdraw his waiver raises a presumption of prejudice sufficient to satisfy the second *Strickland* prong. Accordingly, the Court should grant a certificate of appealability with respect to petitioner's claim that counsel was ineffective for failing to seek withdrawal of his jury trial waiver.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that petitioner has failed to carry his burden of demonstrating that his trial or appellate counsel rendered constitutionally ineffective assistance. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should grant a certificate of appealability with respect to petitioner's claim that counsel was ineffective for failing to seek withdrawal of his jury trial waiver, and should deny a certificate of appealability in all other respects.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

33

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/17/11


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on February 17, 2011.

s/Eddrey Butts
Case Manager

34